UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

VICTOR ROBINSON,

                Plaintiff,

v.                                                  Case No. 23-cv-917-pp

WARDEN D. RADTKE, JOHN KIND,
MS. C. HEIL, J. PURTTU, A. SEMRAU
and LT. RETZLAFF,

                Defendants.

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 13), DENYING PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION (DKT. NO. 20), DENYING PLAINTIFF'S MOTION TO APPOINT COUNSEL (DKT. NO. 21) AND SCREENING COMPLAINT UNDER 28 U.S.C. §1915A**

      Plaintiff Victor Robinson, who is incarcerated at Green Bay Correctional Institution and is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendants violated his constitutional rights. This decision resolves the plaintiff's motions for leave to proceed without prepaying the filing fee, dkt. no. 13, for temporary restraining order and preliminary injunction, dkt. no. 20, and to appoint counsel, dkt. no. 21. This order also screens the plaintiff's complaint, dkt. no. 1.

**I.    Motion for Leave to Proceed without Prepaying the Filing Fee (Dkt. No. 13)**

      The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was incarcerated when he filed his complaint. See 28 U.S.C. §1915(h). The PLRA lets the court allow an incarcerated plaintiff to proceed with his case

1

without prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When funds exist, the plaintiff must pay an initial partial filing fee. 28 U.S.C. §1915(b)(1). He then must pay the balance of the $350 filing fee over time, through deductions from his prisoner account. Id.

On August 15, 2023, the court ordered the plaintiff to pay an initial partial filing fee of $42.34. Dkt. No. 15. The court received $43 on August 25, 2023. The court will grant the plaintiff's motion for leave to proceed without prepaying the filing fee and will require him to pay remainder of the filing fee over time in the manner explained at the end of this order.

## II. Screening the Complaint

### A. Federal Screening Standard

Under the PLRA, the court must screen complaints brought by incarcerated persons seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the incarcerated plaintiff raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include

2

"a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cnty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. Cnty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B. The Plaintiff's Allegations

The plaintiff has sued Warden D. Radtke, John Kind, Ms. C. Heil, J. Purttu, A. Semrau and Lt. Retzlaff in their individual and official capacities. Dkt. No. 1 at ¶¶4-9. The defendants allegedly make up the program review committee at Green Bay Correctional Institution. Id. at ¶¶39, 73. The plaintiff's forty-one-page complaint alleges that in July 2022, the defendants declined to

3

Case 2:23-cv-00917-PP   Filed 03/26/24   Page 3 of 19   Document 23

authorize him to move to a less secure institution so he could be eligible for parole, instead giving him a twelve-month review and elevating his risk rating. The plaintiff claims that the defendants' actions were retaliatory and unlawful.

Before describing the events at Green Bay involving the defendants, the plaintiff references two lawsuits he previously litigated "to show a pattern of misconduct by the department of corrections staff at WSPF [Wisconsin Secure Program Facility], Waupun [Correctional Institution], CCI [Columbia Correctional Institution] and Green Bay Correctional Institution." Id. He states that in Case No. 18-cv-1117, a lawsuit he filed in this district, he alleged that he suffered an allergic reaction after staff at WSPF administered him another incarcerated individual's medication for three days and that he suffered a concussion, injuries and loss of mobility on the right side of his body. Id. at ¶11. The plaintiff also mentions Case No. 20-cv-28-bbc, a case from the Western District of Wisconsin in which he alleged that on January 2, 2018, an incarcerated person named Robert Collins attacked him and stabbed him eight times. Id. at ¶12. The plaintiff allegedly defended himself and Collins suffered injuries. Id. The plaintiff states that he was placed in restrictive housing for 210 days for the assault even though no law, rule or policy forbade him from defending himself. Id. at ¶13. In addition to the two prior lawsuits, the plaintiff alleges that at some point, another incarcerated individual named Dennis Jones placed a "SPN" (Special Placement Need) against the plaintiff to keep the two of them separated, at which time the plaintiff transferred to Green Bay. Id. at ¶14. He says that a SPN is a Wisconsin Department of Corrections (DOC)

4

system for documenting and tracking incarcerated individuals who have issues with staff, other incarcerated persons or a particular facility. Id. at ¶15. Incarcerated individuals allegedly may request an SPN by filling out a form. Id.

The plaintiff alleges that when he arrived at Green Bay, staff members told him on August 7, 2020 that he would be placed on "Red Tag Cell Restriction" due to "plaintiff's history of aggressive institutional violence and security threat group (STG) involvement." Id. at ¶17. The plaintiff states that he was placed on red tag cell restriction to protect the general population, even though *he* was the one who was attacked and stabbed eight times. Id. at ¶18. He says that he can prove that Collins attacked him, and he states that he dropped his affiliation with STGs in 2014. Id. at ¶19.

The plaintiff alleges that he is sixty-five years old and that he was sentenced under Wisconsin's "old law" sentencing structure, under which a person is eligible for parole after having served twenty-five percent of his or her sentence. Id. at ¶¶33-34. He says he became eligible for parole in 2011. Id. at ¶34. The plaintiff alleges that in August 2020, the program review committee at Waupun endorsed him "for a reduction in custody and early reclassification in six months should plaintiff continue to demonstrate positive adjustment." Id. at ¶20. In May 2021, the Parole Board allegedly said the plaintiff had served sufficient time because he had served over thirty years. Id. at ¶21. The plaintiff states that in the last two and a half years, the Parole Commissioner endorsed the plaintiff four times for early re-classification and placement at a less secure institution in preparation for transition to the community because he had

5

"served sufficient time as plaintiff ha[s] been confined over thirty years[.]" Id. at ¶23. In the last two years, four different social workers allegedly endorsed the plaintiff for early re-classification and "placement at a less[e]r secured institution." Id. at ¶24.

The plaintiff alleges that on July 14, 2022, he saw the program review committee, "which was the defendants." Id. at ¶¶39, 73. He states that the defendants alleged that because of the plaintiff's STG history, assaultive aggression, violent history and extensive period of time spent in a single cell, "how do[es] the committee know plaintiff won't attack someone again[.]" Id. ¶40. The plaintiff states that he "ask[s] this court to allow the plaintiff to respond to the defendants['] allegations in the order of th[eir] concern[.]" Id. at 18.

First, the plaintiff states that the defendants "said the plaintiff did not take any steps towards doubling-up with another inmate before going to a less[e]r secured institution, plaintiff was not ready to go to a less[e]r secured institution." Id. ¶41. The plaintiff responds that it no longer was a requirement for incarcerated individuals to "double-up" with another person before going to another institution. Id. According to the plaintiff, defendant Heil allegedly told another incarcerated individual that "it is no longer a requirement that they double-up in a cell with another inmate before going to a less[e]r secured institution and granted this inmate['s] request to go to a less[e]r secured institution." Id.

6

Next, the plaintiff states that he took steps to have the "red tag single cell restriction removed" by writing to defendants Radtke and Kind and asking them to remove it. Id. at ¶42. The plaintiff alleges that he wrote to Radtke on September 6, 2021 and asked that the three-man escort be discontinued because the Parole Commissioner supported a reduction in custody level to medium. Id. at ¶42. Radtke allegedly did not remove the three-man escort at that time, stating "please be advised that plaintiff actions have led to the sanctions and restrictions necessary to safely manage the plaintiff's activities." Id. The plaintiff states that on June 13, 2022—one month before the July 14, 2022 meeting with the program review committee/defendants—defendant Kind removed the red tag status because Radtke "deemed it appropriate to remove the red tag single cell status to allow plaintiff an opportunity to prove his ability to be doubled-up with another inmate[.]" Id. at ¶¶45-46. The plaintiff alleges that the defendants "made a collective decision during the PRC Classification hearing because plaintiff took [no] steps towards doubling-up in a cell with another inmate plaintiff is not ready for a lessor secured institution." Id. at ¶46. The plaintiff alleges that for the last two and a half years, he was given a "six month defer." Id. at ¶47. He states that the defendants "punished the plaintiff by giving him a '12-month' defer and 'elevated his risk rating and institutional adjustment . . . In fact***The defendant[]s said plaintiff's over-all conduct history and (STG) affiliations.'" Id. The committee allegedly said that it believed continued monitoring in maximum was warranted given "elevated risk." Id.

7

Regarding the plaintiff's conduct history, he states that in thirty-four years of incarceration, he has received nine major conduct reports and twelve minor conduct reports but that he hasn't received a conduct report in four years. Id. at ¶48. The plaintiff alleges that defendant Heil, the program review committee classification specialist, has allowed other incarcerated individuals with worse conduct report histories go to less secure institutions. Id. at ¶¶48-49. The plaintiff states that the defendants "punished and retaliated against the plaintiff because he refused to volunteer and double-up in a cell with another inmate by giving him a '12 month defer,' and 'elevated plaintiff['s] risk rating from moderate to high when plaintiff did nothing wrong, plaintiff did not receive a conduct report before he saw defendants." Id. at ¶50.

During the plaintiff's program review committee classification hearing on July 14, 2022, the defendants allegedly said "because of plaintiff time in a single cell since 2005" and his "elevated risk" his continued monitoring in maximum custody was warranted. Id. at ¶53. The plaintiff states that he has not been in a single cell since 2005 and, out of his thirty-four years of incarceration, he has been in a single cell for maybe four years. Id. at ¶55. The plaintiff alleges that another incarcerated individual who has been in a single cell for seven years was called for early program review committee classification even though he refused to double up in a cell and that defendant Heil told this individual that there had been a policy change and he no longer had to relinquish his single cell. Id. at ¶57.

Regarding the plaintiff's elevated risk rating, he states that the only person who knew he was a "high ranking member" of an STG and had "renounced his affiliations" with the STG in 2014 was "Brown," who is not a defendant. Id. at ¶58. The plaintiff states that in his earlier Western District of Wisconsin case, the court determined that the incident with Collins on January 2, 2018 was not gang-related, and he reiterates that he renounced his affiliations with the STG in 2014. Id. The plaintiff states that the defendants "cannot elevate [his] risk rating because the plaintiff refuse[d] to volunteer and double-up in a cell with another inmate unless plaintiff receive a conduct report . . . plaintiff hadn't received a conduct report in four years." Id. at ¶60.

The plaintiff alleges that the defendants said he hadn't had a job "in a while," but he asserts that he can provide documentation of his work history from 1990 to 2018. Id. at ¶61. He states that he can provide four affidavits of incarcerated individuals who hadn't worked in ten years but were allowed to go to less secure institutions. Id. The plaintiff asserts that those individuals did not attend school or complete programs. Id. The plaintiff says that he graduated from three colleges during his thirty-four years of incarceration, and he lists multiple programs that he has completed. Id.

The plaintiff states that the defendants' actions were motivated by "animus ill-will." Id. at ¶62. He believes the above information shows "atypical and significant hardship." Id. The plaintiff asserts conduct that occurred before he was incarcerated at Green Bay and that doesn't involve the defendants

shows "a pattern of misconduct by the Department of Corrections towards the plaintiff." Id. ¶¶62-72.

The plaintiff alleges that during the program review committee hearing on July 14, 2022, defendant Perttu knew the information the committee relied on regarding the incident on January 2, 2018 was not true, but that she went along with the decision to deny plaintiff an opportunity to go to a less secure institution. Id. ¶¶83-84.

The plaintiff states that his thirty-four-year incarceration in maximum custody has damaged his mental health. Id. at 33 ¶¶10-18. The plaintiff alleges that there are numerous rules at Green Bay, that some are ambiguous and that they are enforced erratically. Id. at 36 ¶19. He states that, for example, "the decisions being made by the PRC Specialist Heil and Committee . . . Decision are made selectively, depending on factors such as inmate-staff relationships, staff member's mood, the severity of the rule violation, and the convenience of the rule enforcement." Id. He avers that the conditions at Green Bay are poor. Id. at 36 ¶21.

The plaintiff claims that the defendants have "refused to do a known, mandatory, nondiscretionary, ministerial duty, in violation of Wis. Stat. ¶¶946.12, 946.72, and 946.73[.]" Id. at 38 ¶1. He appears to claim that they fabricated evidence and created false public records related to the plaintiff dropping his affiliation with STGs and the incident on January 2, 2018. Id.

The plaintiff claims that the defendants retaliated against him. Id. at 38-39. He says that they retaliated against him by "raising plaintiff['s] 'Risk Rating,

Institutional Adjustment, and PRC Classification from 'six months' to 12-months'" because they told him he needed to "volunteer and double in a cell with another inmate," but that he refused to do so. Id. at 1.

The plaintiff claims that the defendants' actions violated his Fourteenth Amendment right to equal protection and that they punished him by stating that he had been in a single cell from 2005 until 2022, which was not possible; that he had a history of aggressive, institutional violence, which is a lie; that he had a history of STG involvement, which is not true; that he had "Conduct History," when he hadn't had a conduct report in four years; and because he had been placed on "Red Tag Cell Restriction" to protect the general population, but he was the one who got attacked and was stabbed eight times. Id.

The plaintiff claims that the defendants violated Wisconsin state law by trying their best to make him feel like a failure and that the constant lockdown, boredom, monotony, lack of stimulation and limited access to education leads to extreme stress, anger and frustration in violation of Wis. Stat. §227.10, Wis. Admin. Code §DOC 309.115 and states a claim for intentional infliction of emotional distress in violation of Wisconsin state law. Id.

For relief, the plaintiff requests that the court enjoin the defendants "to abrogate and expunge the misinformation used against the plaintiff to stop [him] from going to a lesser secured institution, such as 'the incident at WSPF on 01/02/2018 was gang related and involved upper level gang member fighting over lead[er]ship.'" Id. at 40. The plaintiff asks the court enjoin the

11

defendants to treat him fairly when reviewing him for a less secure institution. Id. He asks the court to enter a "permanent keep-separate order between the plaintiff and the defendant PRC Specialist Heil." Id. The plaintiff also seeks declaratory relief, compensatory damages and punitive damages. Id.

C.   Analysis

To plead a retaliation claim, the plaintiff must allege that "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the defendants' decision to take the retaliatory action." Perez v. Fenoglio, 792 F.3d 768, 783 (7th Cir. 2015) (quoting Bridges v. Gilbert, 557 F.3d 541, 546 (7th Cir. 2009)).

Incarcerated individuals have a right under the First Amendment "to seek administrative or judicial remedies of conditions of confinement." Holleman v. Zatecky, 951 F.3d 873, 878 (7th Cir. 2020) (citing Babcock v. White, 102 F.3d 267, 276 (7th Cir. 1996)). It appears that the plaintiff alleges that the defendants retaliated against him because he did not follow their instructions to volunteer to move to a double cell so that he could prepare for transfer to a less secure institution. Because the plaintiff states that he refused the defendants' instruction to double up with another incarcerated individual, he presumably did not act in a manner consistent with legitimate penological interests and therefore his refusal did not implicate his rights under the First Amendment. See Watkins v. Kasper, 599 F.3d 791, 796-97 (7th Cir. 2010).

12

Even if the plaintiff had a First Amendment right to refuse to double up, he has not adequately pled the second and third elements of a retaliation claim. The plaintiff alleges that he has been incarcerated in a maximum-security institution for thirty-four years and that the defendants' refusal to authorize his transfer to a less secure institution meant that he remained at Green Bay, a maximum-security institution. This "deprivation" is not likely to deter a person of ordinary firmness from continuing to engage in protected conduct. See Holleman v. Zatecky, 951 F.3d 873, 882 (7th Cir. 2020). In addition, the defendants allegedly told the plaintiff that he needed to double up if he wanted them to transfer him to a less secure institution. He did not double up and they didn't transfer him. While his failure to double up may have been a reason the defendants did not transfer him, the plaintiff has not plausibly alleged that the defendants' motive in refusing to transfer him was retaliatory. See id. at 878-79. The plaintiff has not stated a retaliation claim against the defendants.

The Equal Protection Clause of the Fourteenth Amendment provides that "all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985). In the context of prisons, however, "[u]nequal treatment among inmates . . . is justified if it bears a rational relation to legitimate penal interest." Williams v. Lane, 851 F.2d 867, 881 (7th Cir. 1988) (citing Hudson v. Palmer, 468 U.S. 517, 522–23 (1984)). The Supreme Court has held that not "every religious sect or group within a

13
Case 2:23-cv-00917-PP    Filed 03/26/24    Page 13 of 19    Document 23

prison—however few in number—must have identical facilities or personnel." Cruz v. Beto, 405 U.S. 319, 322 n.2 (1972).

To establish an equal protection violation, a plaintiff must allege and prove "the existence of purposeful discrimination." McCleskey v. Kemp, 481 U.S. 279, 292 (1987)). An incarcerated individual must show that he was "treated differently" than similarly situated incarcerated persons and that there was "no rational basis for the difference in treatment." Willowbrook v. Olech, 528 U.S. 562, 564 (2000). It is not enough for a plaintiff to merely show that other individuals were treated differently. "In order to succeed on an equal protection claim, a plaintiff must show intentional or purposeful discrimination suggesting that 'the decisionmaker singled out a particular group for disparate treatment and selected his course of action at least in part for the purpose of causing its adverse effects on the identifiable group.'" Nkrumah v. Clark, 977 F.2d 585 (7th Cir. 1992) (quoting Shango v. Jurich, 681 F.2d 1091, 1104 (7th Cir. 1982)).

Although the plaintiff mentions his "elder status," dkt. no. 1, ¶2, he does not allege that the defendants treated him differently than other incarcerated individuals based on that status. The plaintiff has not alleged that any defendant discriminated against him based on his membership in a particular group. He references other incarcerated individuals whom the program review committee transferred to a less secure institution who had not first been housed in a double cell or who had more conduct reports than he did. But the plaintiff does not allege that this treatment was related to his own identification

14

in a protected group, which is necessary for him to state an equal protection claim. He has not alleged that he was similarly situated to these individuals regarding the factors that the committee considers when deciding that an incarcerated individual qualifies for placement in a less secure institution. The plaintiff has not stated an equal protection claim.

The plaintiff references several violations of Wisconsin's criminal code. This court cannot criminally charge individuals, and a private citizen (like the plaintiff) cannot bring criminal charges against someone. If the plaintiff believes that the defendants committed crimes, he should report their conduct to local law enforcement, or the local prosecutor. Because the plaintiff has not stated a claim under federal law, the court declines to exercise supplemental jurisdiction over any state law claims. See 28 U.S.C. §1367(c).

The court will give the plaintiff an opportunity to file an amended complaint. The court is enclosing a copy of its amended complaint form. **The plaintiff must use this form for his amended complaint. See Civil Local Rule 9(b) (E.D. Wis.).** The plaintiff must list the case number for this case on the first page. He must list all the defendants he wants to sue in the caption of the amended complaint. He should use the spaces on pages two and three to explain the key facts that give rise to the claims he wishes to bring, and to describe which defendants he believes committed the violations that relate to each claim. If there is not enough space on those pages, the plaintiff may use *no more than five* additional sheets of paper, **double-spaced so that the court can read them.** The amended complaint takes the place of the prior

15

complaint and must be complete in itself; the plaintiff may not refer the court or other readers back to facts in the previous complaint.

When writing his amended complaint, the plaintiff should provide the court with enough facts to answer the following questions: 1) Who violated his constitutional rights?; 2) What did each person do to violate his rights?; 3) Where did each person violate his rights?; and 4) When did each person violate his rights? The amended complaint *does not* need to be long or contain legal language or citations to statutes or cases, but it does need to provide the court and each defendant with notice of what each defendant allegedly did or did not do to violate his rights.

### III. Plaintiff's Motions for Temporary Restraining Order and Preliminary Injunction, and Motion to Appoint Counsel (Dkt. Nos. 20, 21)

The plaintiff has filed a motion for both a temporary restraining order and a preliminary injunction in which he asks the court to restrain the defendants "from being within 100 feet of the plaintiff, having anything to do with making decisions, placement, or sitting on the PRC Committee Board of Classification concerning the plaintiff." Dkt. No. 20-3 at 1. He also asks the court to order that defendant Heil not be allowed to sit on the PRC Committee Board of Classification during the plaintiff's PRC classification hearing "at all times during this complaint . . . and while plaintiff is housed at GBCI." Id. at 2. Because the court has determined that the complaint fails to state a claim for relief under federal law, he has not shown a likelihood of success on the merits. The court will deny the plaintiff's motions for temporary restraining order and preliminary injunction. See Mays v. Dart, 974 F.3d 810, 818 (7th Cir. 2020).

16

The plaintiff also has filed a motion to appoint counsel along with a supporting declaration in which he states that he needs counsel to litigate this case. Dkt. Nos. 21, 22. The plaintiff has not asserted that he tried to find a lawyer on his own, which he must do before the court can consider recruiting counsel for him. See Pruitt v. Mote, 503 F.3d 647, 653 (7th Cir. 2007). Moreover, the court has determined that the complaint fails to state a claim. The court is giving the plaintiff the opportunity to file an amended complaint, but he does not need a lawyer to do that. The court will deny without prejudice the plaintiff's motion to appoint counsel.

## IV. Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 13.

The court **CONCLUDES** that the plaintiff's complaint fails to state a claim. Dkt. No. 1.

The court **DENIES** the plaintiff's motions for temporary restraining order and preliminary injunction. Dkt. No. 20.

The court **DENIES WITHOUT PREJUDICE** the plaintiff's motion to appoint counsel. Dkt. No. 21.

The court **ORDERS** that the plaintiff may file an amended complaint that complies with the instructions in this order. If the plaintiff chooses to file an amended complaint, he must do so in time for the court to *receive* it by the end of the day on **April 19, 2024**. If the court receives an amended complaint by the end of the day on April 19, 2024, the court will screen the amended

17

complaint as required by 28 U.S.C. §1915A. If the court does not receive either an amended complaint or a request for more time to file one by the April 19, 2024 deadline, the court will dismiss this case based on the plaintiff's failure to state a claim in his original complaint and will issue him a strike as required by 28 U.S.C. §1915(g).

The court **ORDERS** that the agency that has custody of the plaintiff must collect from his institution trust account the **$307** balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the plaintiff's trust account and forwarding payments to the clerk of court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency must clearly identify the payments by the case name and number. If the plaintiff transfers to another county, state or federal institution, the transferring institution must forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to Green Bay Correctional Institution, where the plaintiff is confined.

The court **ORDERS** that plaintiffs who are incarcerated at Prisoner E-Filing Program institutions[1] must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs

---

[1] The Prisoner E-Filing Program is mandatory for all individuals incarcerated at Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institutio, and Oshkosh Correctional Institution.

18

who are incarcerated at all other prison facilities must submit the original document for each filing to the court to the following address:

>Office of the Clerk
>United States District Court
>Eastern District of Wisconsin
>362 United States Courthouse
>517 E. Wisconsin Avenue
>Milwaukee, Wisconsin 53202

DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court advises the plaintiff that if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to diligently pursue it. The parties must notify the clerk of court of any change of address. The court advises the plaintiff that it is his responsibility to promptly notify the court if he is released from custody or transferred to a different institution. The plaintiff's failure to keep the court advised of his address may result in the court dismissing this case without further notice.

The court will include a guide prepared by court staff to address common questions that arise in cases filed by prisoners. Entitled "Answers to Prisoner Litigants' Common Questions," this guide contains information that the plaintiff may find useful in prosecuting his case.

Dated in Milwaukee, Wisconsin, this 26th day of March, 2024.

BY THE COURT:

_____
HON. PAMELA PEPPER
Chief United States District Judge